## [No. 1805.]

### GEORGE BARNETT *v.* THE STATE.

ROBBERY — EVIDENCE — FACT CASE.— See the statement of the case for evidence *held* insufficient to support a conviction for robbery.

APPEAL from the District Court of Hood. Tried below before the Hon. T. L. Nugent.

The indictment in this case charged the appellant and Sol McDonald jointly with the robbery of Thomas Heathington, in Hood county, Texas, on the 28th day of November, 1883. The appellant, being alone upon trial, was found guilty by the jury and his punishment was affixed at confinement in the penitentiary for the term of five years.

Thomas Heathington was the first witness for the State. He testified that he had known the defendant for quite a number of years, and for about one year had been acquainted with Sol McDonald, the party jointly indicted with the defendant. Some time during November, 1883, the witness sold McDonald a pony, for which McDonald paid him $22.50 in money, and agreed to transport the witness to Cleburne in Johnson county. The witness sold this

pony to McDonald on one Saturday, and McDonald was to take him to Cleburne between that day and the ensuing Wednesday. McDonald was then living with Jeff Barnett, the brother of the defendant, where the defendant also lived. The witness went with the defendant to Jeff Barnett's house, and stayed their Saturday night, Sunday and Monday. On Tuesday witness and McDonald went out riding together, and were gone pretty much all day. On this ride McDonald asked the witness if he still had the money paid him for the pony. The witness replied to this query in the affirmative.

On the way back to Barnett's house, McDonald stopped at the house of John Keith, about two miles distant from Barnett's house. This was about an hour before sundown. Witness did not stop at Keith's, but went on to Barnett's, where he found Jeff and George Barnett, and George's wife. Sol McDonald reached Barnett's about sundown. He had a bottle of whisky with him, and appeared to be in liquor. He then told the witness that he had made arrangements with some wagoners to take the witness to Cleburne. In this arrangement the witness acquiesced. After supper the defendant and Sol McDonald went out to the crib together. After talking together at the crib for some ten or fifteen minutes, the defendant and Sol came back to the house, where the witness was, and the defendant, in the presence of the witness, asked McDonald: "Sol, what will you give me to take Tom to Cleburne to-night?" To this McDonald replied: "I will give you whatever you ask." The defendant said: "I will take $1," and McDonald said that he would pay that sum. The defendant then saddled two of Sol McDonald's horses, and he and witness started. Sol McDonald, pretending to be drunk, feigned a purpose to go with witness and defendant, but was held by Jeff Barnett. Sol was drinking somewhat, but the witness did not think he was drunk. The start for Cleburne was made between sundown and dark.

After riding some distance the witness remarked that they were traveling too leisurely, and appealed to defendant to increase the speed. Defendant replied that he would do so when the timber was reached, so that he could secure a switch. Witness and defendant traveled on until they reached the timber on Fall Creek, about two and a half miles from Barnett's house. At this point the witness saw a man some little distance ahead, standing on the side of the road, and remarked to the defendant: "There is some one." When the witness and defendant approached the man, he stepped into the road, presented a pistol at the witness, and said: "I demand your money." The witness recognized in that man's voice the voice of

Sol McDonald. His face was covered by a handkerchief or white cloth, and the witness could not see it. The witness also recognized the pistol as one he had seen at Jeff Barnett's house. The ramrod catch was broken and the ramrod hung down. The pistol witness previously saw at Jeff Barnett's house was broken in the same manner. The witness knew the voice to be that of Sol McDonald, and told him that he had no money. McDonald then demanded money of the defendant. Defendant took something from his pocket and threw it on the ground. McDonald told him to dismount, pick it up and hand it to him. The defendant did so. McDonald then told the defendant to search the witness. Defendant approached the witness, and in a whisper told witness he had better surrender his money or the man might use his pistol. Witness took $2 from his pocket, which he gave McDonald, with the remark that it was all the money he had. McDonald said that it was not, and made witness throw up his hands. McDonald then approached witness, inserted his hand in witness's pocket, and took all the money witness had except the $2 he had previously given him. This money was the property of the witness, and consisted of two ten-dollar currency bills, three one-dollar silver pieces, and fractional silver to the amount of $1.70. Witness gave McDonald $2, and in fear of violence at his hands permitted him to take the balance.

After the robbery the robber told the witness and the defendant to go on, which they did. After going a short distance witness asked defendant what was the best thing to do. Defendant replied that, as there was no means of ascertaining the identity of the robber, it was best to go on to Cleburne. This the witness declined to do, saying that he would go back and tell the people about the robbery. Witness and defendant went to Mr. Berry's and told him of the robbery. Berry asked if witness knew who the robber was. Witness replied that he did not, but that he must have been some man who knew how much money the witness had. Berry advised witness to inform the neighbors and try to organize a crowd to pursue the robber. Leaving Berry's, the defendant went to Jeff Barnett's house, he said, to get Sol McDonald to go with him to Acton and organize a pursuing crowd. Witness went to Mr. Rhodes's house and told Rhodes of the robbery. He told Rhodes that he did not know who robbed him, but that it must have been some man who knew that he, witness, was going to Cleburne that night. Witness then went to Cater's camp and told Cater of the robbery; thence he went to Jeff Barnett's and found that defendant and Sol McDonald had gone to Acton. From Barnett's, wit-

ness went to his cousin's house and remained over night. On the morning after the robbery the witness went to Acton and talked to James Glenn and others about the robbery. Thence he went back to Jeff Barnett's house, and with both the defendant and McDonald went to examine the place of the robbery. Next day he went to Granberry and made complaint against Sol McDonald and the defendant, charging them with the robbery.

The cross-examination of this witness resulted in an almost literal recapitulation of his testimony in chief.

John Keith was the next witness for the State. He testified that he had known the defendant about six months and Sol McDonald about twelve. The witness was at home on the evening and night of the alleged robbery. McDonald was at the house of the witness about thirty minutes before sunset on the evening that the robbery occurred. He was going in the direction of his home, about a quarter of a mile northeast from witness's house. McDonald did not appear to be drunk while at the witness's house, and if he had whisky with him the witness did not know it. The defendant and McDonald came to witness's house, going in an easterly direction. They said that they were in search of the party who committed the robbery. Neither of them appeared drunk.

Cross-examined, the witness stated that, when McDonald came to his house the first time on the day of the robbery, Heathington was with him, but did not stop. McDonald stopped on business and stayed perhaps fifteen minutes. The sun was about fifteen minutes high when McDonald left, going in the direction of his brother-in-law's, at whose house he had been staying. It was about 9 o'clock when the defendant and McDonald came to the witness's house that night. They remained about fifteen minutes, talking about the robbery. Defendant did most of the talking, and McDonald had but little to say. Witness understood that the parties had been to Acton.

B. J. Cater testified, for the State, that he knew the defendant and the witness Tom Heathington. Witness was camped on Fall Creek on the night of the alleged robbery. The witness Heathington came to the camp of the witness a short time after dark, somewhat excited, and told of the robbery. He said that he and the defendant were traveling along the road when they were halted by some one and robbed. He stayed at the camp a short time, and rode on. On the same night at about 10 o'clock, the defendant and McDonald came to the camp and asked about Heathington. Defendant said that he and Heathington were robbed that night; that

they were intercepted on the Cleburne road by a man who demanded their money; that the robber held his pistol within a few inches of his, defendant's, nose, and told him to give up his money; that he took out his pocket-book and threw it on the ground; that the robber compelled him to pick it up and deliver it; that the robber took the money from the pocket-book, and then threw the book down; that the robber then made him search Heathington; that he advised Heathington to surrender his money to prevent the possibility of the robber shooting him; that Heathington gave the robber something, and that the robber then put his hand in Heathington's pocket and took something out of it.

Lu Rhodes testified, for the State, that on the night of the alleged robbery, Heathington came to his house and told him of the robbery. He said that he did not know the robber, but thought his voice was familiar, and that the robber must have been some man who knew that he was going to Cleburne that night. After Heathington left, the witness went to Cater's camp. Defendant and McDonald came to that camp between 9 and 10 o'clock, and defendant said that he and Heathington had been robbed that night. Witness recited defendant's account of the robbery substantially as the witness Cater did.

H. T. Berry testified, for the defense, that, on the night of the alleged robbery, Tom Heathington and a man called Barnett came to his house, and said that they had been robbed, and asked witness's advice as to what was best to do. Witness advised them to muster a crowd and institute a search for the robber. Barnett then suggested to Heathington to go back and get " Mack." Heathington replied that " Mack " was drunk. Barnett replied: "He is sober by this time." Witness asked if they had any idea who committed the robbery. Heathington, answering very slowly, said: "No, but I am satisfied that it was some one who knew how much money I had."

On his cross-examination the witness stated that Heathington said that he gave the robber $2 and told him that was all he had; that the robber replied that he had more money, and rifled his pocket of all the money he had.

Jim Glenn testified, for the defense, that in the town of Acton, on the morning after the alleged robbery, Heathington, discussing that affair, told him that some old men down on the river told him that they believed McDonald and defendant perpetrated the robbery, but that he did not believe it; that he did not believe McDonald could be guilty of such a crime. Heathington was then on

his horse outside of Glenn's store, and the witness and Guffey on the inside.

Jeff Barnett, a brother of the defendant, testified in his behalf that the defendant had been staying at his house about six weeks when the alleged robbery is charged to have been committed. McDonald had been staying at the same house off and on for about a month, and was there on the Tuesday night that the robbery is said to have been committed, until defendant came, at about 8 o'clock. McDonald came to the house on that Tuesday evening, about thirty minutes before sunset. He came horseback, was pretty drunk, and got very drunk afterwards on whisky that he brought with him. Witness had McDonald put to bed between sundown and dark. He remained in bed until the defendant came to the house about 8 o'clock, and reported that he had been robbed. Witness got up, wakened McDonald, and McDonald and the defendant left the house to go to Acton. Within thirty minutes after they left, Heathington came to witness's house, and asked where McDonald and defendant were. He remained about thirty minutes and left. McDonald slept in the same room with the witness until defendant came back, about 8 o'clock. Witness had been in bed, but not asleep, about thirty minutes when the defendant came back to the house from his attempted journey to Cleburne. Heathington told the witness that night that the man who robbed him was rather a tall man; that he wore an overcoat and black hat with a wide brim and wide band.

The defense, evidently to impeach or contradict the witness Heathington, read in evidence his testimony before the examining court as it was reduced to writing. There was little difference shown in his statements on the two trials. He stated before the examining trial that he thought he recognized McDonald in the robber by his voice and pistol, and swore positively that the pistol used that night was the pistol he had previously seen at Barnett's house. He stated also on the examining trial that the robber wore a black jeans coat, a black hat, and a handkerchief over his face. He told Mr. Berry that he had not much idea who the robber was, and told Berry what he believed.

The motion for new trial denounced the verdict as unsupported by the evidence.

*Cooper & Estes*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE.   There is not a single inculpatory circumstance in the evidence against the defendant which is not consistent with his innocence.   To say the most of the evidence that can be said reasonably, it barely raises a suspicion that he participated in the robbery.   It falls far short of producing in the mind a moral certainty of his guilt, and by no means excludes the hypothesis of his innocence.   We hesitate not to say, after a careful scrutiny of the statement of facts, that the conviction is without sufficient evidence to support it; wherefore the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Opinion delivered November 26, 1884.]